UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| STEPHEN DEVLIN,<br><br>       Plaintiff**,**<br> v.<br><br>F.W. WEBB COMPANY, STEVE CHIVALLATTI, MIKE PERRY, and RYAN MILLIKEN,<br><br>       Defendants. | Civ. No.: 1:25-cv-10684-MRG |

### ORDER ON DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULES 12(b)(1) and 12(b)(6), [ECF No. 10]

**GUZMAN, J.**

  Plaintiff, Stephen Devlin ("Plaintiff" or "Devlin"), brings this action against his former employer F.W. Webb Company ("F.W. Webb" or the "Company") and co-workers, Defendants Mike Perry ("Perry"), Ryan Milliken ("Milliken"), and Steve Chivallatti ("Chivallatti") alleging six counts[1] of violations of Title VII 42 U.S.C. §2000e(3) ("Title VII") (Counts I, II, and III) and Mass. Gen. Law ch. 151B ("Chapter 151B") (Counts IV, V, and VI) for alleged racial discrimination suffered during his employment at F.W. Webb. [See Compl., ECF No. 1]. Defendants bring a motion to dismiss on all counts. [See ECF No. 10]. For the reasons stated below, the Defendants' motion to dismiss is **GRANTED**.

### I.  BACKGROUND

  The following relevant facts are taken primarily from the allegations in Plaintiffs' Complaint, [Compl.], and are accepted as true for purposes of this motion. Ruivo v. Wells Fargo

---

[1] The Complaint contains six counts but mistakenly includes three counts labeled as "Count IV." [See Compl. ¶¶ 64–79]. The Court therefore construed the second "Count VI – VIOLATION of M.G.L. c. 151B§4 (Racial Discrimination)" as "Count V" – and has renumbered the following counts accordingly.

Bank, N.A., 766 F.3d 87, 90 (1st Cir. 2014) (explaining that a reviewing court "must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)"). All plausible inferences are made in Plaintiff's favor. Id.

### A. Relevant Facts

Plaintiff, an African American man, was employed as a warehouse employee and delivery driver at F.W Webb from July 2021 until April 2022.[2] [Compl. ¶ 14]. During that time, Perry was the regional manager of F.W. Webb, Milliken worked as Plaintiff's supervisor, and Chivallatti worked as an "inside sales employee." [Id. ¶¶ 17–18, 35]. All three of the individual defendants are White men. [Massachusetts Commission Against Discrimination Report (hereinafter "MCAD Report"), ECF No. 12-1 at 3–4].[3] Plaintiff alleges that he was subjected to racially motivated harassment from his co-workers throughout his employment. [Compl. ¶ 16].

The complaint alleges numerous instances of discriminatory treatment from the Defendants or those employed by the Defendants. Plaintiff alleges that Chivallatti continually made racist remarks to Plaintiff while he was employed at the Company, including remarks such as "Black people were always stealing things" and "you people can't swim," along with offering Plaintiff

---

[2] The Court notes that in Plaintiff's filings there is a typographical error, in which he stated that his employment term was "July 202 until April 2022." The range of his employment is clarified in Defendants' filings. [MCAD Report at 3–4, ECF No. 12-1].

[3] The Court may consider certain documents the authenticity of which are not disputed by the parties, official public records, documents central to Plaintiff's claim, and documents sufficiently referred to in the complaint. Watterson v. Page, 987 F.2d 1, 3–4 (1st Cir. 1993) (collecting cases). The Court notes that the MCAD Report [ECF No. 12-1], the Notice of his Right to Sue, [ECF No. 12-2], and the MCAD Probable Cause Finding [ECF No. 12-3] are central to Plaintiff's claims and sufficiently referred to in the complaint, therefore, it is appropriate for the Court to review these documents at this stage in litigation. See also Edwin v. Blenwood Assocs., 9 F. Supp. 2d 70, 72 (D. Mass. 1998) (holding that when a MCAD complaint is referenced in Plaintiff's complaint, and its content determines the parameters, a court can consider the MCAD complaint in making its decision on a 12(b)(6) motion without converting the matter into a summary judgement proceeding).

foods commonly associated with African American stereotypes.[4] [Compl. ¶ 29; MCAD Report at 3]. In October 2021, while employees were dressed in costumes for Halloween, Chivallatti allegedly remarked to Plaintiff "African American[5] people are always going to be inmates" after seeing three female employees dressed as inmates. [Compl. ¶¶ 20–21]. In March 2022, while Plaintiff was speaking with two other warehouse employees, one of the other employees stated "I feel like a ni**er." [Id. ¶ 22]. This comment was subsequently reported by Plaintiff to Milliken, who allegedly did not investigate nor address the comment. [Id. ¶ 23]. In April 2022, Chivallatti, while speaking with Plaintiff and another White co-worker about a Black baseball player's charitable donation, commented that the player could "buy a lot of fried chicken and watermelon" and something to the effect of "I don't like the color black because it stinks and don't work." [Id. ¶¶ 24–25]. On April 11, 2022, when another African American employee did not show up for work, Chivallatti allegedly asked Plaintiff where his "brother" was, along with comments directed at Plaintiff such as "your people don't want to work" and "[y]our people are lazy." [Id. ¶ 28]. On April 15, 2022, Plaintiff "upset by the hostile work environment . . . lost his temper" and informed Milliken about the alleged racial remarks made by Chivallatti. [Id. ¶¶ 32–34; MCAD Report at 4].

On April 18, 2022, at a subsequent meeting with Milliken and Perry about the comments from Chivallatti and other co-workers, Plaintiff stated that he "never worked a job where [he] felt like he wanted to kill a co-worker." [Compl. ¶ 38]. At some point in the conversation, Plaintiff threatened to sue the Company. [Id. ¶¶ 39–40]. Perry informed Plaintiff that his employment was terminated, causing Plaintiff to "[become] upset." [Id. ¶¶ 42–43]. At some point, Perry called the police to remove Plaintiff from the property. [Id. ¶ 46].

---

[4] Plaintiff alleges Chivallatti made comments about watermelon, fried chicken, grape soda, and bananas. [Compl. ¶ 29].
[5] The Investigative Disposition from MCAD states that Chivallatti remarked "Black people are always going to be inmates." [MCAD Report at 3].

### B. Procedural History

On May 9, 2022, Plaintiff filed a joint charge of discrimination with MCAD and the Equal Employment Opportunity Commission ("EEOC") alleging the same facts designated above. [Id. ¶¶ 7–8]. On July 26, 2023, MCAD dismissed the complaint for "Lack of Probable Cause." [MCAD Report at 2]. Plaintiff filed a timely appeal of MCAD's determination that his claim lacked probable cause. [ECF No. 12-3]. On September 6, 2023, the EEOC issued a "Right to Sue" letter, informing Plaintiff he "must [] file[] suit within 90 days of [his] receipt of this notice." [ECF No. 12-2 at 2 (cleaned up)]. On December 11, 2023, MCAD reversed its finding that Plaintiff's complaint lacked probable cause, and a conciliation conference was held by MCAD on April 23, 2024, to discuss the hostile work environment claims. [ECF No. 12-2 at 2; ECF No. 12-4]. On April 24, 2024, MCAD administratively dismissed Plaintiff's complaint. [Id.]

On March 25, 2025, Plaintiff filed his complaint in federal court against the Defendants asserting the same facts alleged in the MCAD Complaint. [See Compl.]. Defendants then filed a motion to dismiss Plaintiff's claims pursuant to Fed. Rule of Civ. P. 12(b)(1) and 12(b)(6), [ECF No. 10], and a Motion to Waive Local Rule 7.1(a)(2). [ECF No. 13]. Plaintiff timely opposed the Motion to Dismiss. [ECF No. 15].

### II. LEGAL STANDARDS

#### A. Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550

4

U.S. at 556). When deciding a 12(b)(6) motion to dismiss, a court must "accept the truth of all well-pleaded facts and draw all reasonable inferences therefrom in the pleader's favor." Grajales v. P.R. Ports Auth., 682 F.3d 40, 44 (1st Cir. 2012) (citing Nisselson v. Lernout, 469 F.3d 143, 150 (1st Cir. 2006)). Dismissal is appropriate if the complaint fails to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008) (citations omitted). At the pleading stage, a plaintiff is not required to "plead facts sufficient to establish a prima facie case," but "those elements are part of the background against which a plausibility determination should be made." Rodriguez-Reyes v. Molina-Rodriguez, 711 F.3d 49, 54 (1st Cir. 2013).

The Court is mindful of Devlin's *pro se* status and acknowledges that *pro se* plaintiff's complaints are "held to 'less demanding standards than those drafted by lawyers' and are read liberally on a motion to dismiss." Gonzales v. Harr Toyota Inc., 23-cv-40145-MRG, 2025 WL 764061 *2 (D. Mass. 2025) (quoting Boivin v. Black, 225 F.3d 36, 43 (1st Cir. 2000)). Although *pro se* plaintiffs are held to a less demanding standard, they still must follow procedural rules and "dismissal remains appropriate when the court lacks jurisdiction" or "when the complaint fails to even suggest an actionable claim." Overton v. Torruella, 183 F. Supp. 2d 295, 303 (D. Mass. 2001) (citing Lefebvre v. Comm'r Internal Rev., 830 F.2d 417, 419 (1st Cir. 1987)).

### III. DISCUSSION

#### A. COUNTS I-III: Title VII

Defendants assert that Plaintiff's complaint should be dismissed pursuant to Rule 12(b)(6) because Plaintiff filed the present action beyond the ninety-day filing window present in the EEOC "Right to Sue" letter. [ECF No. 10 at 2]. Plaintiff argues that his claims should be equitably tolled

5

because the EEOC letter was issued while his MCAD probable cause determination was on appeal. [ECF No. 15 at 2]. For the following reasons, Defendants' motion to dismiss pursuant to 12(b)(6) is **GRANTED** as to the Title VII claims, Counts I-III.

### i. Timeliness of a Title VII Claim

A plaintiff asserting a Title VII claim must file suit within ninety (90) days of receiving the right to sue letter from the EEOC. Abraham v. Woods Hole Oceanographic Inst., 553 F.3d 114, 119 (1st Cir. 2009) (citing Franceschi v. U.S. Dep't of Veterans Affs., 514 F.3d 81, 85 (1st Cir. 2008)); 42 U.S.C. §2000e-5(f)(1). This requirement is strictly construed. Rice v. New England Coll., 676 F.2d 9, 10 (1st Cir. 1982) (concluding that the 90-day filing period was a statute of limitations).

The statute of limitations for Title VII claims may be equitably tolled, however, equitable tolling "'is to be 'used sparingly,' and the circumstances where tolling is available are extremely limited." Dunn v. Langevin, 211 N.E.3d 1059, 1064 (Mass. 2023) (quoting Halstrom v. Dube, 116 N.E.3d 626, 632 (Mass. 2019). The Court is to toll these deadlines sparingly because "[b]y choosing what are obviously quite short deadlines, Congress clearly intended to encourage the prompt processing of all charges of employment discrimination." Mohasco Corp. v. Silver, 447 U.S. 807, 825 (1980). The Supreme Court has recognized limited circumstances that would constitute grounds for tolling the filing deadline, including "inadequate notice, . . . where a motion for appointment of counsel is pending, . . . where the court has led the plaintiff to believe that [they] had done everything required of [them], . . . [or] where affirmative misconduct on the part of a defendant lulled the plaintiff into inaction." Baldwin Cnty. Welcome Ctr. v. Brown, 466 U.S. 147, 151 (1984). "Thus, an employee is generally not entitled to avail himself or herself of the doctrine of equitable tolling if the procedural flaw that prompted the dismissal of [their] claim is

of [their] own making." Abraham 553 F.3d at 119 (citing Jorge v. Rumsfeld, 404 F.3d 556, 565 (1st Cir. 2005)).

While the Title VII claims can be filed with MCAD, which cross-files the claim with the EEOC, there are distinct procedural processes that must be observed for each complaint. Taite v. Bridgewater State Univ., 236 F. Supp. 3d 466, 477 (D. Mass. 2017) ("[A] plaintiff whose complaint is filed with a state agency such as the MCAD, and then shared with the EEOC pursuant to a work sharing agreement, still must obtain a right-to-sue letter from the EEOC in order to bring a Title VII claim.") (citations omitted). Therefore, receiving a "Right to Sue" letter from the EEOC is distinct from receiving a MCAD dismissal. Gregory v. YWCA Haverhill, Inc., No. 13-11342, 2014 U.S. Dist. LEXIS 103936, at *3 (D. Mass. 2014) (Title VII requires an aggrieved employee to file a charge with EEOC or MCAD, but obtain a right-to-sue letter from EEOC before filing suit in federal court); see also Spencer v. Loux, No. 11-12338, 2012 U.S. Dist. LEXIS 106403, at *9 (D. Mass. 2012) ("A litigant exhausts his administrative remedies with respect to charges of discrimination filed with the EEOC under Title VII when he receives a 'right to sue' letter from the agency, after which he has 90 days to file a lawsuit in court.") (citing first 42 U.S.C. § 2000e-5(f)(1), then Noviello v. City of Boston, 398 F.3d 76, 85 (1st Cir. 2005.

    *ii. Plaintiff's Title VII Suit*

In the present action, Plaintiff was issued the "Right to Sue" letter on September 6, 2023. [ECF No. 12-2 at 2]. The current suit was filed on March 25, 2025, 566 days after Plaintiff was notified of the ninety-day deadline. [See Compl.] Plaintiff argues that the statute of limitations to file suit provided by the "Right to Sue" letter should be tolled because "[t]he EEOC should have been informed by MCAD that the case was not closed," due to his appeal. [ECF No. 15 at 2].

These are not "exceptional circumstances" warranting a toll of the filing deadline. Neverson v. Farquharson, 366 F.3d 32, 40 (1st Cir. 2004) (discussing the factors the court must consider before equitably tolling statutory deadlines from Congress). Plaintiff has failed to show any "exceptional circumstances" which prevented him from bringing his Title VII claims within 90 days of receiving the "Right to Sue" letter. Id. Plaintiff has not made any allegation that he did not receive the notice of his rights, he did not motion for appointment of counsel, he alleges no misconduct from the Defendants that would cause him to miss the deadline, nor did the Court lead him to believe that he had done everything required of him. Baldwin Cnty. Welcome Ctr., 466 U.S. at 151; [see ECF No. 15]. The appeals process of a MCAD claim therefore does not constitute "exceptional circumstances" that would toll the statute of limitations for a Title VII claim. Neverson, 366 F.3d at 40; see Daughtry v. King's Dept. Store, Inc., 608 F.2d 906, 907–08 (1st Cir. 1979) (declining equitable tolling where MCAD took six years to resolve complaint but there was no indication of the court misleading the plaintiff).

Plaintiff also asserts that he missed the filing deadline because MCAD had not "notif[ied] the EEOC about the appeal" or their subsequent probable cause findings. Plaintiff provides no evidence to show that there was a failure of communication between the agencies.[6] [ECF No. 15 at 2]. Plaintiff also asserts that he missed the filing deadline of his Title VII claim because he "did not know to notify the EEOC about the appeal and the MCAD's" reversal of their probable cause determination. [Id.] The case law in the First Circuit is clear that "equitable tolling . . . cannot be used to rescue a plaintiff from [their] lack of diligence." See Abraham 553 F.3d at 119 (denying

---

[6] Plaintiff cites to Pronk in his Opposition to the Motion to Dismiss, [ECF No. 15 at 2], this case is factually different from the case at bar. See Pronk v. City of Rochester, No. 22-cv-3090, 2023 U.S. Dist. LEXIS 159645 (D. Minn. Sept. 8, 2023) (Minnesota Department of Human Rights did not receive EEOC claim filing per a workshare agreement). Here, it is undisputed that Plaintiff's MCAD claim was received by the EEOC. [ECF No. 12-2 ("The EEOC has *adopted the findings of the state or local fair employment practices agency* that investigated your charge.") (emphasis added)].

equitable tolling argument where plaintiff failed to notify EEOC of address change) (citing Cao v. Puerto Rico, 525 F.3d 112, 115 (1st Cir. 2008)); see also Bonilla v. Muebles J.J. Alvarez, Inc., 194 F.3d 275, 279 (1st Cir. 1999) (holding that plaintiff failed to allege facts sufficient to equitably toll a ADA statute of limitations); see also Velez v. Roche Prods., 971 F. Supp. 56, 60 (D.P.R. 1997), aff'd, 139 F.3d 56 (1st Cir. 1998) (denying equitable tolling for a claim filed ninety-seven days after notice was received where the delay was caused by plaintiff's lack of diligence).

     Lastly, Plaintiff contends that he "could not have filed [his] case in federal court at the same time it was at the MCAD." [ECF No. 15 at 2]. This is incorrect. Title VII requires that a complainant exhaust their administrative remedies before filing a lawsuit in federal court. Alston v. Massachusetts, 661 F. Supp. 2d 117, 122 (D. Mass. 2009) (citing N.Y. Gaslight Club, Inc. v. Carey, 447 U.S. 54, 64 (1980)). In Massachusetts, "the claim will remain with the MCAD until the MCAD has terminated the claim or 60 days have elapsed" Id. (citing N.Y. Gaslight Club, 447 U.S. at 64). After termination from MCAD "the EEOC will 'reassume' jurisdiction over the claim." Id. (quoting N.Y. Gaslight Club, 447 U.S. at 64–65). This means that the Title VII claim, following the dismissal from MCAD, was in the jurisdiction of the EEOC who had issued the "Right to Sue" letter, exhausting the administrative process with the EEOC. Plaintiff was not precluded from bringing his Title VII claims in federal court while the finding of MCAD was under appeal.

     Because the ninety-day statute of limitations for Plaintiff to file the Title VII claim has passed, the Court cannot grant relief on Plaintiff's Title VII claims.

     Defendants' Motion to Dismiss as to Counts I-III is **GRANTED**.

### B.  COUNTS IV-VI: CHAPTER 151B

While the dismissal of the Title VII claims destroys federal question jurisdiction, the Court next considers whether the Chapter 151B claims may remain before this Court pursuant to diversity jurisdiction under 28 U.S.C. § 1332. Defendants assert that Devlin's state law claims cannot remain in federal court because the language of Chapter 151B requires that a plaintiff "bring a civil action for damages or injunctive relief or both in the superior or probate court for the county in which the alleged unlawful practice occurred." Mass. Gen. Laws ch. 151B, § 9.  The Court does not find Defendants' argument persuasive, however, dismissal is warranted for the remaining Chapter 151B (Counts IV-VI) for Plaintiff's failure to establish diversity jurisdiction pursuant to 28 U.S.C. § 1332.

### i. *This Court Has Jurisdiction to Adjudicate these Claims Based on Diversity Jurisdiction*

While Chapter 151B does state that actions arising under the Chapter are to be filed in state court, Defendants are incorrect in their assertion that this language would bar Plaintiff from bringing his claim in federal court. The caselaw provided by Defendants is correct in that Massachusetts "has not waived its sovereign immunity from suits under state law in federal court." Moorer v. Dept. of Soc. Services, No. CIV.A. 08-11584-MLW, 2010 WL 3258609, at *7 (D. Mass. Jan. 25, 2010), R. & R. adopted, No. 08-11584-MLW, 2010 WL 3258607 (D. Mass. Aug. 16, 2010). The key distinction between this action and Moorer is that the Defendants in the present case are not governmental agencies or employees, rather they are private individuals and a private corporation, therefore there is no viable Eleventh Amendment sovereign immunity argument. U.S CONST. AMEND. XI. ("The Judicial power of the United States shall not be construed to extend to any suit . . . commenced . . . *against one of the United States*") (emphasis added).

Defendants also cite Clarke, where the Plaintiff brought Chapter 151B claims against their former employer for sexual harassment. Clarke v. Kentucky Fried Chicken of California, Inc., 57 F.3d 21, 22 (D. Mass. 1995). The parties in that case were diverse and the case was removed to the district court. Id. The court in Clarke dismissed the action based on the plaintiff's failure to adjudicate their claims to exhaustion through the MCAD. Id. at 29. The present action can be distinguished from this holding, because Plaintiff has exhausted his administrative remedies before filing this lawsuit. [Compl. ¶¶ 7–9].

Defendant also urges this Court to construe the language of the statute strictly, reading Chapter 151B to limit claims to be initially filed in state court alone. [ECF No. 11 at 15]. Looking to the statute, it states that "[t]his chapter shall be construed liberally for the accomplishment of its purposes." Chapter 151B, § 9. Interpreting the statute to read that Plaintiff cannot file this complaint in federal court without first filing it in state court runs contrary to the purpose of this Chapter, as it would severely restrict potential plaintiffs access to adjudicate their claims. Regardless of the statute's language, "a state has no power to deprive federal courts of diversity or supplemental jurisdiction over state law causes of action." Rivera v. Com. of Mass., 16 F. Supp. 2d 84, 87 n. 4 (D. Mass. 1998) (citing Hindes v. FDIC, 137 F.3d 148, 168 n. 15 (3d Cir.1998); and Hardemon v. City of Boston, 144 F.3d 24, 28 (1st Cir.1998)); see Awadh v. Tourneau, Inc., No. 15-CV-13993, 2018 WL 1318921, at *5 (D. Mass. 2018) ("A plaintiff must file a civil claim in *either* state or federal court alleging violations of Chapter 151B") (emphasis added) (citing Everett v. 357 Corp., 904 N.E.2d 733, 743 (Mass. 2009)).

In their memorandum to support the motion to dismiss, Defendants admit that "[f]ederal courts do, of course, routinely adjudicate Massachusetts state law discrimination claims." [ECF No. 11 at 15 n. 7]. Defendants contend that this is proper "*only* after plaintiff has initially filed

11

their Chapter 151B claims in Massachusetts superior or probate court" and they are removed to federal court. [Id. (emphasis added)]. This contention is incorrect. See Messina v. Araserve, Inc., 906 F. Supp. 34, 35 ("[Plaintiff] brings suit, based on diversity jurisdiction, under Chapter 151B of Massachusetts law"); see also Tang v. Div. of Sexually Transmitted Disease Control and Prevention, No. 08-10590-GAO, 2008 WL 5101366, at *1 (D. Mass. 2008) (claimant brought Chapter 151B claims on diversity jurisdiction). Filing a Chapter 151B claim in Massachusetts state court is not a pre-requisite to have the case adjudicated in federal court. See Awadh, 2018 WL 1318921, at *5. Defendants are incorrect in their claim that the "Court lacks subject matter jurisdiction to adjudicate Plaintiffs remaining state law claims." [ECF No. 11 at 13].

### ii. *Plaintiff Has Not Pled Sufficient Facts to Bring This Action Based on Diversity Jurisdiction*

Moving from whether the Court can generally hear Chapter 151B claims to whether the Court can hear Plaintiff's claims, the Court finds that Plaintiff has not met his burden to establish diversity jurisdiction in the present action. For a federal court to have diversity jurisdiction, the amount in controversy must exceed $75,000 dollars, exclusive of interests and costs, and the adverse parties must be citizens of different states. 28 U.S.C. § 1332. The burden is on the plaintiff to "establish that the minimum amount in controversy has been met." CE Design, Ltd. v. Am. Econ. Ins. Co., 755 F.3d 39, 43 (1st Cir. 2014) (quoting Abdel-Aleem v. OPK Biotech LLC, 665 F.3d 38, 41 (1st Cir. 2012)). A plaintiff's "good faith allegation of damages meeting the required amount in controversy is usually enough." Id. However, the First Circuit has held "'legal certainty that the claim is really for less than the jurisdictional amount,' [] trumps the plaintiff's good faith in claiming for a larger amount." See Esquilín-Mendoza v. Don King Prods., Inc., 638 F.3d 1, 4

(1st Cir. 2011) (citations omitted) (discussing St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288–89 (1938)).

Here, Plaintiff's complaint fails to meet those statutory requirements. While the adverse parties are completely diverse,[7] Plaintiff has failed to give an accounting to the Court to justify the $500,000 amount in controversy claimed in this action. [ECF No. 1-1; ECF No. 15]. The Court is mindful of Plaintiff's *pro se* status and construes his claims liberally, nevertheless, he is still bound by the Federal Rules of Civil Procedure and bears the burden of establishing subject matter jurisdiction. Erickson v. Pardus, 551 U.S. 89, 94 (2007); Curry v. United States, 787 F. App'x 720, 722 (Fed. Cir. 2019). This burden is heightened when a Defendant challenges the Court's subject matter jurisdiction based on the amount in controversy, such as in this case. Defendants in their show cause response, challenged Plaintiff's assertion of the amount in controversy in their and is correct in stating that the Plaintiff's complaint is devoid of the information necessary to pursue his claims on diversity jurisdiction. [ECF No. 18]. To survive the 12(b)(1) hurdle, Devlin must counter jurisdictional arguments with "sufficient particularity," to support his claims under diversity jurisdiction. Andersen v. Vagaro, Inc., 57 F.4th 11, 15 (1st Cir. 2023) (quoting Dep't of Recreation & Sports of P.R. v. World Boxing Ass'n, 942 F.2d 84, 88 (1st Cir. 1991)). The Court lacks jurisdiction to adjudicate this case without a "good faith allegation of damages meeting the required amount in controversy." CE Design Ltd., 755 F.3d at 43 (quoting Abdel-Aleem, 665 F.3d at 41). Recognizing that Plaintiff is *pro se* and that he initially brought these claims under federal question jurisdiction, the Court intends to provide Plaintiff with the opportunity to amend his pleadings to assert diversity jurisdiction if it is proper.

---

[7] Delvin is a resident of Rhode Island, F.W. Webb's principal place of business is Massachusetts, and all three of the remaining individual Defendants are residents of Massachusetts. [Compl. ¶¶ 1–2; ECF 18].

### *iii. Plaintiff's Chapter151B Claims and the Finality of his Adjudication*

Because the Court lacks subject matter jurisdiction to adjudicate this action, it declines to reach the merits of the Plaintiff's Chapter 151B claims. See e.g., Christopher v. Stanley-Bostitch, Inc., 240 F.3d 95, 100 (1st Cir. 2001) ("When a federal court concludes that it lacks subject matter jurisdiction over a case, it is precluded from rendering any judgments on the merits of the case."). However, for the sake of judicial efficiency, at the outset of any future pleading, the Court notes that it is not persuaded by Defendants' arguments that Plaintiffs' claims are nonviable because they have been *adjudicated* to a final resolution, as an administrative dismissal of Plaintiff's claims does not represent an adjudication on the merits. 804 CMR 1.08(1)(d)(4) ("An administrative dismissal shall not constitute a final order for purposes of exercising rights provided under M.G.L. c. 151B, § 6 or M.G.L. c. 30A.").

Returning to the pleading before the Court, as stated, Devlin has failed to allege how his claims meet the threshold amount of $75,000, therefore, his complaint is subject to dismissal for lack of subject matter jurisdiction. See Trustees of Boston University v. ASM Communications, Inc., 33 F.Supp.2d 66, 76–77 (D. Mass. 1998) (dismissing state claims where plaintiff failed to plead that damages exceeded $75,000); see also Torres v. Doctors Ctr. Hosp. Manati, No. CV 11-1479 SEC, 2012 WL 1952833, at *5–6 (D.P.R. 2012) (dismissing case where plaintiff failed to show their claims exceed $75,000). However, given Plaintiff's *pro se* status, in lieu of completely dismissing Plaintiff's Chapter 151B claims with prejudice, the Court grants dismissal without prejudice and provides Plaintiff with leave to amend his complaint to provide factual support to demonstrate that the amount in controversy exceeds the requisite $75,000. See Golub v. Ne. Univ., No. 19-CV-10478-ADB, 2019 WL 6115210, at *8 (D. Mass. Nov. 18, 2019) (giving *pro se* plaintiff leave to amend his complaint to demonstrate that the amount in controversy would exceed

the requisite $75,000); Andrawis v. City of E. Providence, No. CV 21-12062-RGS, 2021 WL 5989966, at *3 (D. Mass. Dec. 17, 2021) ("Given that [plaintiff] is proceeding *pro se*, he will be granted an opportunity to amend the complaint to correct the pleading deficiencies noted above."); Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires.")

## IV.     CONCLUSION

For the foregoing reasons, Plaintiff's federal Title VII claims are **DISMISSED with prejudice** because the 90-day window to file has passed. As for Plaintiff's Chapter 151B claims, they are **DISMISSED without prejudice**. Plaintiff is granted **30 days** to amend his complaint in compliance with this Order.

## V.     SUMMARY FOR PRO SE PLAINTIFF

Your claims were dismissed in this Order, but you have 30 days to refile with some changes. Regarding your Title VII claims, the requirement that you file your Title VII claims within 90 days of receiving your Right to Sue letter from the EEOC is a strict rule and you do not have an exception that would justify extending the 90-day window. This means that you are unable to bring the Title VII claims now. The Title VII claims were dismissed with prejudice, meaning you cannot bring them again in a new lawsuit against the same defendants. When you get a final judgment in this case, (note, this Order is *not* a final judgment), you will ultimately be able to appeal that decision.

Regarding your Chapter 151B claims, these claims fail because the Court does not have subject matter jurisdiction. Subject matter jurisdiction is a court's legal authority to hear and decide a specific type of case based on the nature of the controversy. Federal courts have limited jurisdiction due to restrictions in the Constitution and under federal statutes. When a court does not have subject matter jurisdiction, it cannot make a ruling on your claims. There are two primary

ways that a federal court can have original jurisdiction over the claims in a case: federal question and diversity jurisdiction. Federal question jurisdiction is found when a plaintiff is asserting claims under federal law or the Constitution. Because your Title VII claims were dismissed, you cannot establish federal question jurisdiction. Therefore, you may only proceed with your state law claims in this case if there is diversity jurisdiction.

To achieve diversity jurisdiction, a plaintiff must properly assert in their complaint that they reside in a different state from all defendants in a lawsuit **and** that the total damages in the case are over $75,000, exclusive of costs and interests. Although the Defendants' response to the Court on February 10, 2026, confirmed that you reside in a different state than the Defendants, you must outline this in your Amended Complaint and outline with enough particularity or factual support how you meet the threshold of exceeding $75,000 in damages. Instead of dismissing your Chapter 151B claims with prejudice, you are being given a chance to amend your complaint to fix the problems identified in this opinion. You now have **30 days** to refile your complaint in this Court, outlining how your damages exceed $75,000 excluding interest and costs.

**SO ORDERED.**

Dated: February 25, 2026

                                                           /s/ Margaret R. Guzman
                                                         Margaret R. Guzman
                                                         United States District Judge